*In re* ESTATE OF MANSFIELD.

Estates of Decedents: EXECUTORS: RIGHTS AS TO REAL ESTATE: EXTRA COMPENSATION: ESTOPPEL OF HEIR. A testator in his will named certain persons as the executors and administrators of his estate, "personal and real." Understanding that by this appointment they were authorized to do so, which understanding was

shared by the heirs, the parties so named, after qualifying, proceeded to take charge of the real as well as the personal estate, collecting rents, making improvements and paying taxes, all with the knowledge and tacit consent of the heirs. They made an interlocutory report, in which they charged the estate with expenditures so incurred, which was approved by the court, without notice to the heirs. Afterwards the heirs and the executors entered into an agreement, whereby the executors were to proceed as theretofore in regard to the real estate, and at the end of the time for filing claims they were to make a showing of the indebtedness in excess of the money in their hands, whereupon the heirs were to furnish them the money to pay all the indebtedness, and the estate was then to be closed up and distribution made according to the terms of the agreement. The heirs furnished the money accordingly, the debts were paid, distribution was made, and the executors made a final report, which included a charge by one of the executors for extra compensation for legal services, he being also an attorney at law. This charge was estimated among the liabilities of the estate when the heirs borrowed the money to pay the residue of the indebtedness, and they must be presumed then to have known of it. One of the heirs filed exceptions to charges for expenditures for improvements and taxes on real estate, as shown by the final report, and also by the interlocutory report, and especially to the charge for extra compensation for legal services. Under the agreement for distribution, the contestant was to receive advantages not contemplated by the will. *Held* that, whatever rights the executors had by virtue of the will to take charge of the real estate as they did, the contestant was estopped to object thereto, because, *first*, the agreement was an acquiescence in what they had done in that respect, and a warrant for their continuing in the same course; and, *second*, as she did not propose to relinquish that part of the agreement which was of advantage to her, she could not object to expenditures which were made pursuant to other provisions of it. Also, that she could not then be heard to object to the charge for legal services, because she must be presumed to have known of and assented to it when she joined with the other heirs in borrowing the money to pay the indebtedness of the estate, whereby a distribution was secured, under the will and the agreement, to her advantage.

*Appeal from Linn District Court.*—Hon. J. H. Preston, Judge.

Filed, June 2, 1890.

Lura M. Reed, as heir at law, filed objections to the final report of the executors; and from an order

overruling the objections, and approving the report, she appeals.

*Wm. G. Clark*, for appellant.

*C. J. Deacon*, for appellee.

GRANGER, J.—Appellant's statement of the case, and of some inquiries involved, are as follows: "Dr. E. L. Mansfield died testate, at Cedar Rapids, Iowa, May 26, 1887. His will appointed his son, L. W. Mansfield, and his son-in-law, C. J. Deacon, executors, without bonds, of his estate, which consisted largely of real property situated in Cedar Rapids. The decedent's debts and liabilities amounted to upwards of forty thousand dollars, a part of which was evidenced by promissory notes, of which the executor Deacon and others were joint makers. The decedent left a widow and three children. The appellant, Lura M. Reed, was a daughter, and took under the will an interest in three-tenths of the entire estate, a portion of which was, however, vested temporarily in the executors as trustees for her benefit, and for the benefit of her minor children. The executors qualified immediately, and on the thirtieth of December, 1887, filed an interlocutory report purporting to show their acts as executors to that date, and containing a detailed statement of their receipts and alleged expenditures. No one appearing to contest this report, it was on the sixth day of January, 1888, approved as of course. On July 6, 1888, a final report was filed, showing the doings of executors to date, and alleging that the estate was fully settled, and asking to be discharged and exonerated. On the same day the appellant, Lura M. Reed, filed objections to the final report, and to the interlocutory report, attacking a large number of the items of disbursement in each report; and alleging that the disbursements of the first report had been charged against the estate, and allowed by the court, either through the fraud or the mistake of the executors. The objections were in the

nature of a general denial, attacking each item of disbursement of the reports as wasteful and unauthorized by law. A trial was had to the court, without a jury, at the October, 1888, term of the court; the appellant alone contesting the propriety of the acts of the executors. The appellant especially objected to the allowanc' and approval of large disbursements which the executors claimed to have made in payment of taxes, and for improvements to the real property of the decedent, and to disbursements for labor on the real property, and for hay and oats purchased and fed to horses owned by the executor, L. W. Mansfield, and by the widow, Mary E. Mansfield, and to the allowance of an attorney's fee of twelve hundred dollars to the executor, C. J. Deacon. The merits of the case require an inquiry as to: *First.* What duties an executor owes to the real property of his decedent, and what powers he has thereover, which are not expressly conferred by will? *Second.* What rule should govern the court as to claims of an executor for attorney's fees or extra compensation? *Third.* Is appellant barred as to the attorney's fee by assent or settlement? *Fourth.* Many of the items of dispute had been filed as claims against the estate, and were approved as such by the executors. How far is such an approval an adjudication, as between the executors and the heirs, of the justness of such claim?"

A notice of these general inquiries may very much abridge what would otherwise be an extended opinion, resulting from the discussion of the numerous questions presented in detail. The object of stating these general inquiries is not so much to discuss abstract propositions of law, as to call attention to the particular facts which give them importance in the case, and to confine our reasoning thereto, and to the rules of law that should govern.

I. The facts that give rise to the first inquiry are, *first*, a clause in the will, and, *second*, the conduct of the parties. It is true in the case that the executors

In re Est. of Mansfield.

took charge of the real estate, consisting of town or city property, with buildings thereon, vacant lots and farm lands. The executors made quite extended improvements by way of repairs and additions to the buildings, paid taxes, etc., for which the law gives no warrant, unless the acts were sanctioned by the will or the acts of the parties in interest. In this case we need only inquire as to the acts of appellant, Lura M. Reed, for she is the only party complaining. It is insisted that the executors had no authority to assume control of or to manage the real estate, and that for expenditures or services in that respect they are not entitled to reimbursement or compensation. The executors entered upon the discharge of their duties on the twenty-sixth day of June, 1887, and from that time had possession of and controlled the real estate as stated, to May 28, 1888, when the widow and all the heirs entered into an agreement in writing pertaining to the settlement of the estate, which it will be impracticable to set out in full, because of its length, but parts of it will be quoted.

After the date and names of parties, are these words: "That whereas, certain differences have arisen between the parties above named, with reference to the distribution of the estate of said E. L. Mansfield, deceased, and the portion to be allotted to each in final settlement of said estate: Now, therefore, for the purpose of settling all differences, and establishing definitely the share of each, and the basis of division into such respective shares, it is hereby mutually understood and agreed, by and between the parties hereto, as follows." Then follows an agreement for division of the real estate, specifying the particular tracts for the widow and each heir, and incumbrances to be paid by each, with other particulars. The following paragraphs have reference to appellant: "(a) One-fifth of the share falling to the said Lura M. Reed shall be retained by C. J. Deacon and L. W. Mansfield, executors of said estate, in trust for the children of said Lura M. Reed, in accordance with the terms of the will of said

E. L. Mansfield, deceased, and the remaining four-fifths thereof shall be delivered and paid to said Lura M. Reed; it being the judgment of said executors that such payment to her is most suitable for her use and benefit. The signature of said executors to this agreement shall be deemed an expression of such judgment, and shall be binding upon them. All debts of said estate, except the one-third of said sixteen thousand dollars assumed by said Mary E. Mansfield, widow, shall be paid by the said heirs at law, Silvia M. Deacon, Lura M. Reed and L. W. Mansfield, in proportion to their respective interests, viz. : Three-tenths thereof by Silvia M. Deacon, three-tenths thereof by said Lura M. Reed, and four-tenths thereof by said L. W. Mansfield."

After provisions as to the distribution of the estate, having reference to that which is productive and unproductive, the following appears : "This contract is made in contemplation of a speedy division of said estate. The year for filing claims against said estate will expire June 23, 1888. Within two months thereafter the said heirs at law agree to pay all debts filed and established against said estate. Immediately upon the payment of said debts, the executors of said estate shall proceed to divide and distribute said estate in accordance with this agreement, and by their signatures to this agreement they assent and agree to proceed at once to the appointment of referees for that purpose, so that the entire settlement of said estate and division thereof can be approved and confirmed at the October term, 1888, of the district court of Linn county, Iowa. Until the final distribution of said estate, the executors shall proceed as heretofore, collecting rents and other claims due said estate, and paying the liabilities ; it being especially understood that out of said rents they shall pay the last installment of taxes due in the year 1888. The real estate, under contract of sale, shall be conveyed as hereinbefore, and the proceeds used in the payment of debts. If any remains undisposed of at the time of final settlement of said estate, it shall be distributed to the said

heirs at law in proportion to the indebtedness assumed by each, and the personal property remaining undisposed of shall be distributed in the same manner." It is then agreed that a suit by appellant against L. W. Mansfield in the district court of Linn county shall be dismissed, at her costs ; and afterwards as follows: "The said three heirs at law named herein agree, at the end of said year at which claims can be filed against said estate, to advance the money, and pay and discharge all remaining indebtedness of said estate, to enable said executors to immediately make their final report. The executors of said estate are made parties to this contract, and by their signatures hereto assent to its terms and provisions, and agree to carry it out, so far as in their power, under the direction of the said district court of Linn county, Iowa. A statement of the debts and liabilities of said estate, so far as the same have come to the knowledge of the executors, with interest computed thereon to May 1, 1888, is hereto attached, and made a part of this contract."

Referring to the clause quoted from the agreement, indicated "(a),", its importance will be better understood by a quotation from the will, as follows: "And I do hereby direct that two-fifths of the said Lura M. Olmsted's interest in my estate be kept in trust by my executors as trustees for her use and benefit, to be paid over to her at such times and in such sums as in their judgment may be most suitable for her use and benefit, until the full amount is paid over to her, with reasonable interest on same, if her interest retained by them (the said trustees) be in money." Lura M. Olmsted, referred to in the will, is now Lura M. Reed, appellant herein. It will be observed that the agreement has the effect to terminate the trust created by the will as to two-fifths of the bequest to appellant; and, to avoid the force or effect of her signature to the instrument, to some extent, at least, she urges that the agreement was necessary to obtain possession of the property. The will contains this clause: "I name and select C. J.

Deacon and L. W. Mansfield as my executors and administrators of my estate, personal and real, to act as such without giving any bonds whatever." It is quite apparent that the legal effect of this clause, as to real estate, received different constructions by the parties in interest, and had much to do with the executors first assuming control of it. Its legal effect we need not determine. If such possession and control were not previously authorized, it was acquiesced in by all parties in interest, appellant herself being absent from the state most of the time, but occasionally being present, and having knowledge of the facts. Add to these facts the agreement of May 28, and we think there is little room for doubt as to this particular question. The agreement throughout has reference to the settlement of the estate, and it provides that, "until final distribution of said estate, the executors shall proceed as heretofore, collecting rents and other claims due said estate." Its entire language is directed towards a way and means of early disposition and distribution, and he who reads must understand that at that time there was no purpose to question the authority of the executors as to the real estate, and, hence, an acquiescence or approval.

The real estate to be divided by this agreement had already been benefited by the improvements and disbursements made by the executors, and paid for from the personal estate, and reported to the court, and these facts were known to all. Without holding that the agreement itself is conclusive of the question of fact, it, with the other proofs, leaves no doubt in our minds that the executors in their control of the real estate acted by authority of all the parties in interest, and that their expenditures in that respect are proper charges against the estate, and, in so far as the objector is concerned, against the personal estate. Mrs. Reed says in her testimony that, before the agreement, speaking of the authority of the executors to manage the real estate, she did not suppose she had a right to say anything about it. She supposed they had a right to go ahead

and do as they pleased. This supposition we understand to have been based on a mistaken view of the law as to their rights ; that is, a mistaken view, if the will did not give the right to such control. If the view was a mistaken one, it was generally shared in by the parties ; but such mistake would not operate to change the fact that the executors acted by consent, or that their course of conduct was approved.

II. There was allowed to C. J. Deacon, who was one of the executors, and also an attorney at law, as additional compensation, twelve hundred dollars, and such allowance is made a ground of complaint. The second general inquiry is as to "what rule should govern the court as to claims of an executor for attorney's fees or extra compensation ;" and the third is, "Is appellant barred as to the attorney's fee by assent or settlement ?" We answer the fourth as conclusive of both. It is true that the twelve hundred dollars is not all, in legal contemplation, extra compensation for services as an executor. It included compensation for services as an attorney in a partition suit, and the allowance of this twelve hundred dollars seems to have been a subject of conversation and agreement between the parties. One of the provisions of the agreement of May 28 was that the heirs of the estate, including Mrs. Reed, should "advance the money and pay and discharge all remaining indebtedness of said estate to enable the executors to immediately make their final report." In pursuance of the agreement, the executors so far concluded their labors as to know the amount necessary to be furnished by the heirs, which was $1,032.90 ; and this amount was by the heirs—Mrs. Reed with the others—borrowed from a bank, and paid to the executors for final payments. It is undisputed that the amount thus furnished was in payment of all indebtedness, including the twelve hundred dollars. Mrs. Reed undoubtedly did know, as she should have known, for what the money was to be applied. In consequence of this payment, there was a distribution of the property, both real and personal,

which, but for such payment, could not have been, because of a provision in the will that there should be no distribution to any of the heirs before all the debts were paid. This was a principal object to be gained by the settlement; and a somewhat strange feature of the transaction, and bearing somewhat on the equities of appellant's claim, is that, after she had gathered to herself the advantages of the agreement in her favor, she repudiates other portions favorable to others, and without a claim that she did not act upon full information as to the facts. This thought is aided by the fact noticed in the former division of the opinion, wherein she takes the advantages of having her property, under the limitations of a trust, released therefrom, and would then disregard the agreement by which it was effected. By the agreement, and its observance to the extent of paying the money for the discharge of all claims, and the distribution of the property in pursuance thereof, there was a complete settlement of the estate, barring the order for final discharge. This situation was a result of a common understanding and agreement, and will go far to defeat any objection to a conclusion of the settlement, unless such objection is aided by mistake or fraud unknown at the time of the agreement. Mrs. Reed paid her portion of the money to effect a final settlement. It was not paid with any expectation that a portion would be returned, as would be the effect of sustaining this objection, and disallowing the item. Her payment, in pursuance of the agreement, was an assent, and she cannot now disturb it.

III. The fourth general inquiry involves, if considered by items, a multitude of specific objections, which we need not consider in detail. Many of the items specified, the allowance of which is charged as fraudulent and improvident, were included in a report filed in December, 1887, and approved by the court, but without notice; and, if we treat the action of the court as not conclusive, because of a want of notice, still Mrs. Reed is bound, under our reasonings in the former

division of the opinion. She acted as to all these matters with knowledge. The last item of the report is June 26, 1888, crediting the heirs with $1,032.90, and on the same day the payments for which the money was provided were made and the final report filed. It was but a carrying out of the agreement of the parties, and we see no reason for disturbing the result. The case presents many objections as to the introduction and exclusion of testimony, but, with our treatment of the case, the judgment of the court can stand on undisputed facts; and hence the errors, if any, are without prejudice. The action of the district court is

AFFIRMED.